1  Alan D. Smith, CSBA 89112
   ADSmith@perkinscoie.com
2  Jeffrey S. Goodfried, CSBA 253804
   JGoodfried@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067
   Telephone:  310.788.9900
5  Facsimile:  310.788.3399

6  Attorneys for U.S. Bank National Association,
   as Trustee for the Registered Holders of
7  Wachovia Bank Commercial Mortgage Trust,
   Commercial Mortgage Pass-Through
8  Certificates, Series 2004-C14

9
                    UNITED STATES BANKRUPTCY COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11
                    SAN FERNANDO VALLEY DIVISION
12

13

| 14 | In re Summer View Sherman Oaks Apartments, LLC, | CASE NO. 1:11-BK-19800-AA |
|----|---|---|
| 15 | Debtor. | Chapter Number: 11 |
| 16 | | **DECLARATION OF ANDREW HUNDERTMARK IN SUPPORT OF U.S. BANK NATIONAL ASSOCIATION, ETC.'S MOTION FOR 11 U.S.C. § 543 (d)(1) RELIEF FROM TURNOVER OF PROPERTY (AND TO THE EXTENT NECESSARY RELIEF FROM THE AUTOMATIC STAY)** |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | [Filed concurrently with Motion for 11 U.S.C. § 543(d)(1) Relief from Turnover of Property; Memorandum of Points and Authorities; Declaration of Jeffrey Goodfried in Support Thereof] |
| 22 | | |
| 23 | | |
| 24 | | Date:     September 28, 2011<br>Time:    10:00 a.m.<br>Place:    Courtroom 303<br>             21041 Burbank Blvd.<br>             Woodland Hills, California |
| 25 | | |
| 26 | | Before the Hon. Alan M. Ahart |
| 27 | | |
| 28 | | |

60642-0445.0001/LEGAL21616209.1

1   I, Andrew Hundertmark, declare as follows:

2   1.   I am a Senior Vice President with CWCapital Asset Management LLC ("CWCapital") the special servicer for the holder of the Loan (as defined below) first perfected secured creditor U.S. Bank National Association, as Trustee, as successor-in-interest to Bank of America, N.A., as Trustee, as successor by merger to LaSalle Bank National Association, as Trustee, for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2004-C14 (the "Lender" or "U.S. Bank"). I am primarily responsible for the administration of the Loan (as defined below). The documents referred to in this declaration constitute business records of CWCapital, which are kept and recorded in the ordinary, regular course of business at or about the time of the events that they accurately portray. I have responsibility for and personal knowledge of the maintenance of such business records. Except where stated, I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the matters stated herein.

**The Loan Documents**

2.   On or about June 24, 2004, Wachovia Bank, National Association, a national banking association ("Wachovia") made a $16,000,000.00 loan (the "Loan") to SR Summer View Holdings, LLC, a Delaware limited liability company (the "Original Borrower"). The Loan is secured by certain real property located in Los Angeles County at 15353 Weddington Street, Sherman Oaks, California 91411 and more particularly described in Exhibit A attached hereto and incorporated herein by this reference (the "Property").

3.   The Loan is evidenced by, among other instruments, that certain Promissory Note (the "Note") dated June 24, 2004, executed by the Original Borrower in favor of Wachovia in the original principal sum of $16,000,000.00. Furthermore, the Loan is secured by, among other things: (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), executed by the

1  Original Borrower, as trustor, to First American Title Insurance Company, as trustee, for
2  the benefit of Wachovia, as beneficiary; and (ii) that certain Assignment of Leases and
3  Rents (the "Assignment of Rents") dated as of June 22, 2004, executed by the Original
4  Borrower, as assignor, in favor of Wachovia, as assignee. True and complete copies of
5  the Note, the Deed of Trust and the Assignment of Rents are attached hereto as Exhibits
6  B, C and D, respectively, and incorporated herein by this reference.
7       4.    The Deed of Trust encumbers the Property by a first priority lien as
8  recorded in the Official Records of Los Angeles County, California (the "Official
9  Records") on June 25, 2004, as Document No. 04 1630654. The Assignment of Rents
10 was recorded in the Official Records on June 25, 2004, as Document No. 04 1630655.
11      5.    The Note, the Deed of Trust, the Assignment of Rents, and all other
12 documents evidencing, securing or relating to the Loan are sometimes collectively
13 referred to herein as the "Loan Documents."
14      6.    Wachovia assigned the Loan Documents to LaSalle Bank National
15 Association, as Trustee for the registered holders of Wachovia Bank Commercial
16 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2004-C14
17 ("LaSalle") pursuant to: (i) that certain Assignment of Deed of Trust, Assignment of
18 Leases and Rents, Security Agreement and Fixture Filing (the "LaSalle Assignment of
19 Deed of Trust"), recorded in the Official Records on February 14, 2005, as Document No.
20 05 0339237; (ii) that certain Assignment of Assignment of Leases and Rents (the "LaSalle
21 Assignment of Assignment of Rents"), recorded in the Official Records on February 14,
22 2005, as Document No. 05 0339238; and (iii) that certain Assignment of Note and
23 Ancillary Security Documents (the "LaSalle Assignment of Ancillary Documents"). In
24 addition, Wachovia endorsed the Note in favor of LaSalle pursuant to that certain Allonge
25 (the "LaSalle Allonge"). True and complete copies of the LaSalle Assignment of Deed of
26 Trust, the LaSalle Assignment of Assignment of Rents, the LaSalle Assignment of
27 Ancillary Documents and the LaSalle Allonge are attached hereto as Exhibits E, F, G
28 and H, respectively, and incorporated herein by this reference.

7.  Effective as of July 18, 2005, debtor Summer View Sherman Oaks, LLC (the "Debtor") assumed the Loan, the Loan Documents and all of the Original Borrower's obligations therein pursuant to that certain Loan Assumption and Substitution Agreement (the "Assumption Agreement"), recorded in the Official Records on July 19, 2005, as Document No. 05 1697079. A true and complete copy of the Assumption Agreement is attached hereto as <u>Exhibit I</u> and incorporated herein by this reference.

8.  Further, Bank of America, N.A., as Trustee, as successor by merger to LaSalle Bank National Association, as Trustee, for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2004-C14[1] ("Bank of America") assigned the Loan Documents to U.S. Bank pursuant to: (i) that certain Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing; Assignment of Assignment of Leases and Rents (the "U.S. Bank Assignment of Loan Documents"), recorded in the Official Records on April 15, 2011, as Document No. 2011-0546405; and (ii) that certain Omnibus Assignment (the "U.S. Bank Omnibus Assignment"). In addition, Bank of America endorsed the Note in favor of U.S. Bank pursuant to that certain Allonge (the "U.S. Bank Allonge"). True and complete copies of the U.S. Bank Assignment of Loan Documents, the U.S. Bank Omnibus Assignment and the U.S. Bank Allonge are attached hereto as <u>Exhibits J, K and L</u>, respectively, and incorporated herein by this reference.

9.  Accordingly, U.S. Bank is now the holder of the Note, beneficiary under the Deed of Trust, and secured party and/or assignee under all of the other Loan Documents.

**The Debtor's Default Under the Loan and Service of Demand for Payment**

10.  Pursuant to Section 1.2 of the Note, the Debtor promised to pay to Lender consecutive monthly payments of interest only on the eleventh (11th) day of each month beginning on August 11, 2004, through and including July 11, 2007. Thereafter, the

---

[1] Effective October 17, 2008, LaSalle Bank National Association, which was the original trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2004-C14, merged into and under the charter and title of Bank of America, N.A.

Debtor promised to pay to Lender consecutive monthly payments of principal and interest beginning on August 11, 2007, through and including June 11, 2014, with all remaining indebtedness and accrued but unpaid interest due on July 11, 2014.

11. Further, Section 1.6 of the Deed of Trust provides that concurrently with and in addition to the monthly payments of interest and principal due under the Note, the Debtor shall pay to Lender amounts equal to (i) one-twelfth (1/12) of the amount of the annual real estate taxes and assessments that will next become due and payable on the Property, plus (ii) one-twelfth (1/12) of the amount of the annual premiums that will next become and payable on insurance policies for the Property; each amount as estimated and determined by Lender.

12. Commencing in December 2010, and continuing to the present, the Debtor has failed to timely make its required monthly payments as and when required by the Loan Documents.

13. Attached hereto as <u>Exhibit M</u> is a true and complete copy of a letter I received from Mark E. Birnbaum of Perkins Coie LLP, counsel for the Lender, dated February 25, 2011 (the "Demand Letter"), which was addressed to the Debtor. In this letter, the Lender provided formal notice to the Debtor of its defaults for failure to make the required installment payments as and when due under the Loan Documents.

14. The Debtor has failed to cure its defaults under the Loan Documents or to pay all amounts due under the Loan Documents since its receipt of the Demand Letter.

15. As of March 11, 2011, the Lender is owed in excess of $983,419.57 in principal, interest, tax and insurance escrows and reserves, default interest, late charges, title charges and other costs and expenses. Further, due to the acceleration of the Loan, the total indebtedness on the Loan exceeding $19,833,233.83 is now due, owing, and unpaid, including a yield maintenance premium which would be due in accordance with the Loan Documents.

16. Due to the defaults under the Loan Documents, Lender commenced a non-judicial foreclosure on the Property by causing a Notice of Default to be recorded in the

1  Official Records on March 17, 2011, as Document No. 2011-0406038. A true and
2  complete copy of the Notice of Default is attached hereto as <u>Exhibit N</u> and incorporated
3  herein by this reference.

4      17.   I am informed and believe that the Debtor has been collecting rents from the
5  Property throughout the time period during which the Debtor has not made its payments
6  under the Loan Documents without turning over same to the Lender as required under the
7  Loan Documents. I am further informed and believe based on a rent roll for the Property
8  dated March 15, 2011 (the "Rent Roll") that the Property generates monthly rents in the
9  sum of approximately $161,059.60. Attached hereto as <u>Exhibit O</u> and incorporated by
10 this reference is a true and complete copy of the Rent Roll.

11              **The State Court Appoints *Ex Parte* a Receiver to Manage the Property**

12     18.   On April 28, 2011, the Honorable Barbara A. Meiers, Judge of the Superior
13 Court, granted on an *ex parte* basis (the "*Ex Parte* Order"), the appointment of receiver
14 Clyde Holland of Holland Residential (the "Receiver") to take possession of the
15 Property.[2] The State Court granted the *ex parte* application after Lender presented the
16 following grounds:

17     a.   <u>The Debtor defaulted on the Loan by failing to make its required
18 monthly payments as and when required by the Loan Documents.</u> More than $983,419.57
19 in principal, interest, tax and insurance escrows and reserves, default interest, late charges,
20 title charges and other costs and expenses was owed as of March 11, 2011. Further, due
21 to the acceleration of the Loan, the total indebtedness on the Loan exceeding
22 $19,833,233.83 is now due, owing, and unpaid, including a yield maintenance premium
23 which would be due in accordance with the Loan Documents.

24     b.   <u>The Debtor diverted rents in violation of the absolute assignment of
25 Leases and Rents clauses contained in the Deed of Trust and the Assignment of Rents.</u> In
26 the Loan Documents, the Debtor absolutely assigned the rents and profits of the Property

---

[2] A true and complete copy of the *Ex Parte* Order is attached hereto as <u>Exhibit P</u> and incorporated herein by this reference.

1 | to the Lender. Commencing in December 2010, and continuing to the present, the Debtor
2 | has failed to make its payments under the Loan. ***While in default, the Debtor collected***
3 | ***the rents from the Property from December 2010 to April 28, 2011 without turning over***
4 | ***same to the Lender as required under the Loan Documents.***
5 |       c.    <u>The Debtor has already agreed to an *ex parte* application for the</u>
6 | <u>appointment of a receiver</u>. In Section 3.1(d) of the Deed of Trust, the Debtor consented to
7 | the Lender's application for and the appointment of a receiver in the event of the Debtor's
8 | default under the Loan Documents.
9 |     19.    On May 24, 2011, the State Court entered an Order Confirming
10 | Appointment of Receiver and Preliminary Injunction (the "Receiver Order"). A true and
11 | complete copy of the Receiver Order is attached hereto as <u>Exhibit Q</u> and incorporated
12 | herein by this reference.
13 |     20.    Based on the financial information available, the economics for this
14 | Property appear to be as follows:

- The Property generates monthly rental income between $130,000 and $140,000 a month.
- The Property's expenses are about $20,000 to $40,000 a month, not including property taxes and insurance.
- Therefore, about $100,000 a month should have been paid to the Lender from December 2010 to April 2011. This should total close to $500,000.
- However, the Lender did not receive any such payments during that time.
- When the Receiver took over the Property, it received $185,250 in cash (and $39,470 for security deposits).
- So, it appears in excess of $300,000 is missing (not including missing security deposit funds). It remains unclear where this money went, whether the Debtor still has any of the cash, or whether it has been spent on something else.

1   I declare under penalty of perjury under the laws of the State of California and
2  United States that the foregoing is true and correct.
3   Executed this 29th day of August 2011, in Baltimore, Maryland.

*Andrew Hundertmark*

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28