1  TERRY D. SHAYLIN (Bar No. 242094)
   **KARASIK LAW GROUP, LLP**
2  555 West 5th Street, Floor 31
   Los Angeles, CA 90013
3  Telephone (213) 623-9200
   Facsimile (213) 623-9323
4

5  (Proposed) Attorneys for Summer View Sherman Oaks, LLC, Debtor and Debtor-in-
   Possession
6

7                **UNITED STATES BANKRUPTCY COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9                **SAN FERNANDO VALLEY DIVISION**

10  In re                                 | Case No. 1:11-bk-19800-AA

11  **SUMMER VIEW SHERMAN OAKS,**         | Chapter 11
    **LLC.,** a Delaware limited liability company,

12                                        | **DEBTOR'S REPLY TO U.S. BANK**
              Debtor and Debtor-in-Possession | **NATIONAL ASSOCIATION'S**
13                                        | **OPPOSITION TO DEBTOR'S MOTION**
                                          | **TO COMPEL THE STATE COURT**
14                                        | **APPOINTED RECEIVER TO TURN**
                                          | **OVER THE PROPERTY OF DEBTOR**
15                                        | **PURSUANT TO SECTION 543(a) AND (b)**
                                          | **OF THE UNITED STATES**
16                                        | **BANKRUPTCY CODE**

17                                        | **DECLARATION OF TERRY SHAYLIN;**
                                          | **DECLARATION OF SONIA SOBOL, IN**
18                                        | **SUPPORT THEREOF**

19                                        | Date:    September 28, 2011
                                          | Time:   10:00 a.m.
20                                        | Courtroom: 303
                                          | 21041 Burbank Blvd.
21                                        | Woodland Hills, CA, 91367

22                                        | Before the Hon. Alan M. Ahart

23

24

25

26

27

28
                                    1
    **DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
    COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
    PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

## DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S  OPPOSITION TO DEBTOR'S MOTION TO COMPEL THE RECEIVER TO TURN OVER THE PROPERTY OF THE DEBTOR

**I.     U.S. Bank National Association's Opposition Contains Numerous Misrepresentations of Material Facts**

The Debtor wants to bring to the Court's attention the fact that U.S. Bank National Association's (the **"Lender"**) Opposition to Debtor's Motion to Compel the State Court Appointed Receiver to Turn Over the Property of Debtor Pursuant to Section 543(a) and (b) of the United States Bankruptcy Code contains numerous misrepresentations of material facts that contradict records, evidence and other parties' testimonies, including the Limited Opposition of Receiver Clyde Holland to Debtor's Motion to Compel and the supporting Declaration of Maija Mercer.

Those misrepresentations are important because the Lender uses material representation of those facts in order to take the Debtor out of possession.

On page 2, lines 11-18 of the Opposition, the Lender states that "the Debtor essentially argues that the Debtor's principal Sonia Sobol, as Trustee of a family trust, is the most capable manager of the Debtor's property located at 15353 Weddington Street, Sherman Oaks, CA 91411 (the **"Property"**)." That is not true. In the Debtor's Motion to Compel, the Debtor repeatedly says that the Property should be managed by a professional management company. See Debtor's Motion to Compel, Page 4, lines 3-5, 6-8. See also Memorandum of Points and Authorities in Support of Debtor's Motion to Compel, page 18, line 22-24. Not only did the Debtor never make such statements regarding Ms. Sobol, on September 14, 2011, the Debtor filed its Application for an Order Authorizing Employment and Retention of Cirrus Asset Management, Inc (**"Cirrus"**). as the Management Company for Debtor's Apartment Building. In the Debtor's Application to Employ, the Debtor asks the Court to employ an independent and neutral management company not affiliated with or owned by the Receiver, such as Cirrus.

**DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

On page 3, lines 14-19 of the Opposition, the Lender states that after Ms. Sobol learned of the default, she did almost nothing, neither using her own funds to cure the default nor suggesting a loan modification with the Lender. That is not true. In February 2011, Ms. Sobol initiated communication with the Lender and suggested a loan modification. See the Declaration of Olga Karasik filed concurrently with Debtor's Motion to Compel, paragraphs 3, 4 and 11. Ms. Sobol immediately started looking for a replacement management company for Mashcole Property Management (**"Mashcole"**), the management company for the Property at the time, found Cirrus, and requested that the Lender terminate Mashcole as the management company of the Property and employ Cirrus. That goes far beyond "nothing".

On page 3, lines 9-13 of the Opposition, the Lender states that Debtor defaulted in December 2010 under the loan documents. That is not true. The loan statement produced by the Lender shows that on December 29, 2010 the Lender received a $46,064.06 interest payment and on January 11, 2011 the Lender received a $92,577.53 payment, which the Lender applied to the principal, interest, tax, and insurance. Thus, Debtor was not in any default in December. See **Exhibit "B"** to the Declaration of Shaylin in Support of Debtor's Motion to Compel filed on September 7, 2011.

On Page 4, lines 24-28 of the Opposition, the Lender states that from December 2010 to April 2011 the Debtor did not make any payments to the Lender. That is not true. The Lender's statement shows that on December 29, 2010 the Lender received a $46,064.06 interest payment and on January 11, 2011 the Lender received a $92,577.53 payment, which the Lender applied to the principal, interest, tax, and insurance.

On Page 4, line 25-26, the Lender states that in December 2010 to April 2011 the Debtor had control of the Property and obviously collected rent. The evidence show that at that time the Debtor did not collect any rent, rather, it was Mashcole, the Property's management company, which collected all rent. The Debtor wanted to change the Property's management company from Maschole to Cirrus on March 22, 2011, however the Lender refused to provide its consent.

**DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

1    On Page 5, lines 14-15 of the Opposition, the Lender states that at Turnover the Debtor

2  handed the Receiver cash in the amount of $182,250.  In fact, it was not the Debtor, but rather

3  Mashcole who handed the Receiver a $185,250.75 check on or about May 20, 2011. See the

4  Receiver's Inventory and Monthly Report for May 2011, including the Summer View Property

5  Narrative attached as **Exhibit "A"** to the Declaration of Terry D. Shaylin filed concurrently with

6  this Reply.

7    On Page 7, lines 5-6 of the Opposition, the Lender states that Ms. Sobol claims that an

8  employee from Mashcole embezzled about $20,000. That is not what Ms. Sobol claims, it is what

9  the Receiver reported to the Debtor and to the Lender.

10    On Page 7, lines 14-15 of the Opposition, the Lender claims that Ms Sobol made the

11  request to change the Property's management company over three month after defaulting. The

12  Lender declared default on the Property on February 25, 2011. The Debtor requested a

13  replacement management company for Mashcole on March 22, 2011, less than one month after

14  the default letter was received from the bank, and during the time when the Debtor was actively

15  communicating with the Lender regarding loan modification.

16    On Page 7, line 6 of the Opposition, the Lender states that Ms. Sobol refused to pay for an

17  audit regarding Maschole's embezzlement. That is not true. Ms. Sobol immediately expressed her

18  consent to an audit. It took the Lender about a month to consider an audit and to refuse to

19  consent.  At no time did Ms. Sobol refuse to pay for an audit.

20    On Page 8, lines 6-11 of the Opposition, the Lender contends that Holland already hired

21  an onsite manager (John Fogarty) who is from the San Fernando Valley area and has

22  approximately ten years of property management experience, including management of

23  properties transferred to receiverships. That statement is another direct misrepresentation of

24  material facts to the Court. There is no onsite manager named John Fogarty with ten years of

25  property management experience. The Debtor's counsel, Terry Shaylin, personally visited the

26  Property on numerous occasions and always communicated with the onsite manager D'Edward

27  Matthews and the assistant property manager Cynthia Gutierezz. Maija Mercer of Holland

28

DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE

1  Residential provided her Declaration in support of the Receiver's Limited Opposition to Debtor's

2  Motion to Compel. She testifies on Page 2, paragraph 4 of her Declaration filed on September 14,

3  2011, that the onsite property manager, who is responsible for day-to-day operations of the

4  Property on behalf of Holland Residential, is D'Edwards Matthews.  Ms. Mercer further testifies

5  Mr. D'Edwards managed a competing apartment property near the Property for approximately

6  five years.

7      The above listed instances are only a few samples of misrepresentation of material facts in

8  the Opposition. The Lender supplies the Court with a series of misrepresentations and

9  insinuations against the Debtor not supported by evidence and directly contradicted by evidence

10  provided by the Receiver, the Debtor, and the Lender's own documents.

11  **II.    The Lender Failed to Meet its Burden of Proof To Establish Cause To Excuse**

12  **The Receiver from the Turnover Provision**

13      The Lender bears the burden of establishing cause under 11 U.S.C. § 543(d) to excuse the

14  Receiver from the turnover provisions of 11 U.S.C. § 543(b). Cause must be proved by the

15  preponderance of the evidence. In re *Lizeric Realty Corp.*, 188 B.R. 499 (Bankr. S.D.N.Y. 1995),

16  cited by the Lender in its Opposition, the Court held that the Movant Lender has the burden of

17  proof on the motion for relief from turnover obligation. The cases cited by the Lender deal with

18  hands-on pre-petition gross mismanagement or pre-petition dishonesty.  The Lender presents no

19  admissible evidence of Ms. Sobol's or the Debtor's gross mismanagement or dishonesty.  On the

20  contrary, all evidence shows no misdeed on behalf of the Debtor.

21      The evidence shows that the Property was purchased by Ms. Sobol's son Efim in 2005.

22  Until April 2007, the Property was under the management of Stratus Real Estate, Inc.

23  (**"Stratus"**). After Stratus was acquired by Riverstone Management Company (**"Riverstone"**),

24  Riverstone took over the management of the Property. Thus, Riverstone was not the Debtor's

25  choice. See the Declaration of Ms. Sobol dated September 20, 2011 filed concurrently with this

26  reply.  In June 2007, Ms. Sobol's son suddenly passed away. Ms. Sobol was left to deal with her

27  son's estate.  In February 2008, Ms. Sobol's husband, Efim's father, suddenly passed away. (Decl

28

DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE

1    of Sobol, paragraph 8).  It took years before Ms. Sobol was confirmed as the trustee of her son's

2    trust.  After Ms. Sobol's authority as the trustee was confirmed , she asked the lender to replacer

3    Riverstone.

4            Ms. Sobol has never taken a dime from the Property. The Lender asks in opposition a

5    rhetorical question how could Ms. Sobol not know about the default until February 2011.

6    Mashcole informed Ms. Sobol that the mortgage was paid in January, 2011, which is true because

7    the Lender's records show that on January 11, 2011, the Lender received a $92,577.53 payment

8    towards the mortgage. In addition to that, there is a significant lapse of time before the

9    management company produces its records.

10           For example, Receiver's management company Holland Residential provided July 2011

11   financials to the Debtor only on August 29, 2011, twenty nine days after the end of the month.

12   Thus, if Holland failed to make any payment on July 11, 2011, the Debtor would learn that fact

13   one and a half month later.  To continue the example, to date, September 21, 2011, the Debtor

14   cannot obtain from Holland Residential the August 2011 financials containing pre-petition

15   records up to August 15, 2011. See the Declaration of Shaylin filed concurrently, paragraphs 13-

16   15 and **Exhibit "E"**. This delay in information is one of the reasons why the Debtor asks the

17   Court to terminate Holland Residential's employment and to appoint Cirrus. Cirrus has

18   committed to provide all parties with full financials by the 12th of each month, while Holland

19   Residential has proved to be incapable of providing its financials in a timely manner.

20           Given the lapse of time between the end of the month and the date of the management

21   company's report, Ms. Sobol reasonably learned about the mortgage's non-payment at the end of

22   February 2011, exactly as she stated in her Declaration, and not earlier.

23           While Ms. Sobol may be guilty of making a genuine mistake, which she promptly tried to

24   correct but the Lender did not let her, Ms. Sobol's actions, however strictly scrutinized, do not

25   rise to the level of dishonesty and mismanagement.

26           The Lender's accusation of Ms. Sobol diverting rent is not supported by any evidence.

27   The Debtor produced all disbursements of the Mashcole Summer View Account from December

28

**DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

1  2010 to April 2011, showing where the money went from the Mashcole Summer View account.

2  (See **Exhibit "M"** to Declaration of Shaylin filed on September 14, 2011). The records show that

3  not a single payment was made to the Debtor or Ms. Sobol.

4        On September 21, 2011, the Debtor's counsel obtained Summer View Mashcole bank

5  statement for May 2011 and learned for the first time that in May 2011, after the State Court

6  appointed the Receiver, Mashcole withdrew for the Summer View bank account $53,680.52. See

7  the Declaration of Shaylin and its attached **Exhibit "C"** dated September 21, 2011 filed

8  concurrently with this Reply.

9        The Debtor's counsel also further learned that$18,649 out of $53,680.52 of the Debtor's

10  funds are still being held by Mashcole in Maschole's bank account. See the Declaration of

11  Shaylin paragraph 10 and its attached **Exhibit "D".**

12        The Debtor's counsel immediately instructed Mashcole not to distribute, withdraw, or

13  otherwise dispose of the Debtor's funds held in Maschole's bank account. The Debtor will take

14  all steps necessary to recover those funds and to deposit them into the DIP account of the Debtor.

15  The Debtor also obtained information about every payee who received any payments from the

16  Maschole Summer View Account in May, 2011. The Debtor intends to investigate each of those

17  payments. At no time did the Receiver report this information to the Court or to the Debtor, nor

18  did the Receiver disclose the existence of the Debtor's funds on hold by Mashcole, even though

19  those funds were obtained by Mashcole after the Receiver was appointed and took over the

20  Property of the Debtor.

21        This additional evidence again shows that Ms. Sobol had nothing to do with any diversion

22  of funds. The Debtor is taking all steps necessary to locate and recover its Property and is

23  succeeding in doing so, even though it is direct duty of the Receiver to obtain the Property of the

24  Debtor after April 28, 2011 and report to the Court and to the parties any violation of the April

25  28, 2011 court order.

26        The Lender has not cited any cases on point when the property was not managed by the

27  debtor, but the management companies, and when the debtor had no access to the rents and

28

**DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

1  profits and had never received any disbursements from the property income.  The lender failed to

2  meet its burden.

3    **III.    Evidence of Debtor's Communication with The Lender and Receiver Is**

4  **Admissible**

5         The Debtor fully addresses the Lender's objections to a portion of the Declaration of

6  Terry Shaylin in support of Debtor's Motion to Compel pertaining to communication with the

7  Lender and the Receiver's counsel in its Response to the Lender's Evidentiary Objection to, and

8  Motion to Strike, Portions of Declaration of Terry D. Shaylin. In summary, the communication in

9  question was a traditional meet and confer communication regarding administration of the estate

10  and was never intended to be confidential settlement negotiations. The subject communication

11  was not confidential communication between the Debtor and the Lender. The Receiver's counsel

12  was a recipient and a participant of the communication. A court appointed fiduciary cannot

13  negotiate with the Debtor the terms of termination of his receivership. All communication

14  between the Receiver, the Lender and the Debtor is admissible and cannot be shielded by the

15  Lender invoking Federal Rule of Evidence 408.  The subject communication is highly relevant

16  and admissible on the issue of disinterestedness of the Receiver, or lack of disinterestedness, on

17  the issue of improper use of receivership as leverage against the Debtor and preventing the

18  Debtor from successful reorganization, and on the issue of the existence of a conflict of interest

19  between the Receiver as a fiduciary and the Receiver as the owner and affiliate of Holland

20  Residential.

21    **IV.    The Receiver in the Present Case is Not Neutral and Disinterested**

22         A receiver is not an agent of any party to the action, but instead is a fiduciary who, as an

23  officer and representative of the Court, acts for the benefit of all persons interested in the property

24  (*Security Pacific National Bank v. Geernaert* (1988) 199 Cal.App.3d 1425, 1431-1432*;*

25  *Maggiora v. Palo Alto Inn Inc*. (1967) 249 Cal.App.2d 706, 712.

26         Fiduciary duty requires the fiduciary "to act with the utmost good faith for the benefit of

27  the other party." (*In re Marriage of Reuling*, 23 Cal.App.4th at p. 1438.) The fiduciary "can take

28                                            8

**DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

1  no advantage from his acts relating to the interest of the other party without the latter's knowledge

2  or consent..."  Complying with fiduciary duty requires more than "honesty of intention," or good

3  faith.  It requires loyalty, or a commitment to not secure any advantage, in opposition to the other

4  party, without that party's knowledgeable consent.

5       In the present case, the Receiver is under irredeemable conflict of interest in supervising

6  its own management company.

7       The conflict is shown in the communication between the Lender, the Debtor and the

8  Receiver attached to Ms. Shaylin's Declaration filed on September 7, 2011, communication

9  evidence which the Lender is trying to strike. The Receiver has interest in obtaining and

10 additional business and income for Holland Residential, from which he personally benefits. The

11 Receiver has allowed the Lender to request on his behalf that the Receiver receive an additional

12 $1,000 compensation from the Debtor for overseeing or supervising the Receiver's own

13 management company in managing the Debtor's estate, in addition to compensation charged by

14 the management company after the receivership is terminated.

15      It does not matter that a trustee may have acted in good faith; self-dealing in violation of

16 the duty of loyalty cannot be justified by the good faith of the trustee.  *In re Estate of Pitzer*

17 (1984) 155 Cal.App.3d 979, 992.

18      The Court has the power to remove a receiver when a conflict of interest exists.  When

19 that self-interest has once been asserted, the Court may properly assume that it will continue to be

20 asserted, and may act accordingly. *In re Estate of Tersip,* 86 Cal.App.2d 43.

21      In the present case, the Receiver's selection of his own management company to manage

22 the Property constitutes self-dealing and lack of disinterestedness and neutrality. The Receiver's

23 self-interest conflicts with everyone who has an interest in the Debtor's estate. The Lender's

24 attempt to obtain extra personal compensation for the Receiver from the estate if the receivership

25 is terminated, and Receiver's apparent consent to that arrangement, also shows a lack of

26 disinterestedness and neutrality from the Receiver.  Thus, turnover of the Property is required.

27

28

**DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO
COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR
PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**

1

### V.    Conclusion

The Debtor respectfully requests this Court to deny the Lender's Motion and to enter an order compelling the Receiver to turn over the Property of Debtor's estate to Debtor pursuant to Section 543(a) and (b) of the Bankruptcy Code.


Dated:  September 21, 2011                          KARASIK LAW GROUP, LLP

By:_____/s/ Terry Shaylin_____

TERRY D. SHAYLIN, ESQ.

(Proposed) Attorney for Summer View Sherman Oaks, LLC, Debtor and Debtor in Possession

| In re: | |
|---|---|
| Summer View Sherman Oaks, LLC | CHAPTER:  11 |
| Debtor(s) and Debtor-in-Possession. | CASE NUMBER:  1:11-bk-19800-AA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 555 West 5th Street, Floor 31, Los Angeles, CA 90013.

**A** true and correct copy of the foregoing document described as   **DEBTOR'S REPLY TO U.S. BANK NATIONAL ASSOCIATION'S OPPOSITION TO DEBTOR'S MOTION TO COMPEL THE STATE COURT APPOINTED RECEIVER TO TURN OVER THE PROPERTY OF DEBTOR PURSUANT TO SECTION 543(a) AND (b) OF THE UNITED STATES BANKRUPTCY CODE**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.**   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 21, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on

| | |
|---|---|
| Margaux Ross | margaux.ross@usdoj.gov |
| United States Trustee (SV) | ustpregion16.wh.ecf@usdoj.gov |
| Alan D Smith | adsmith@perkinscoie.com |
| Phillip K Wang | pwang@duanemorris.com, jnazzal@duanemorris.com |

**II.**   **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served) **On September 21, 2011**  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on

The Honorable Alan M. Ahart
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

**III.**   **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

☐ Service information continued on

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 21, 2011 | Jennifer Min | /s/ Jennifer Min |
|---|---|---|

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                           **F 9013-3.1**

| | |
|---|---|
| In re:<br><br>Summer View Sherman Oaks, LLC<br><br>Debtor(s) and Debtor-in-Possession. | CHAPTER:  11<br><br>CASE NUMBER:  1:11-bk-19800-AA |

## ADDITIONAL SERVICE INFORMATION

**Served by U.S. Mail**

ATTORNEY FOR US TRUSTEE

Margaux Ross, Esq.
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

ATTORNEY FOR RECEIVER:

Phil Wang, Esq. and Phillipe Toudic, Esq.
Duane Morris LLP
1 Market Plaza, Spear Tower, Suite 2200
San Francisco, CA 94105-1127

SECURED CREDITORS:

Alan D. Smith
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101

TWENTY LARGEST UNSECURED CREDITORS:

Carol R. Hamilton, Esq.
L.A. Commercial Group, Inc.
317 S. Brand Blvd.
Glendale, CA 91204

Rut J. Laureano
Karsaz & Associates
375 E. Warm Springs Road, Suite 104
Las Vegas, Nevada 89119

Leo G. O'Biecunas Jr. and Thomas Zide
Zide & O'Biecunas LLP
14545 Victory Bl Ste. 404
Van Nuys, CA 91411

California State Board of Equalization
PO Box 942879
Sacramento, CA 94279

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_   **F 9013-3.1**

| | |
|---|---|
| In re:<br><br>Summer View Sherman Oaks, LLC<br><br>Debtor(s) and Debtor-in-Possession. | CHAPTER:  11<br><br>CASE NUMBER:  1:11-bk-19800-AA |

County of Los Angeles
Treasurer & Tax Collector
PO Box 54027
Los Angeles, CA 90054-0027

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280

Franchise Tax Board
Bankruptcy Unit
PO Box 2952
Sacramento, CA 95812

Internal Revenue Service
Insolvency Unit
PO Box 7346
Philadelphia, PA 19101-7346

LA County Tax Collector
Bankruptcy Unit
2615 South Grand
Los Angeles, CA 90807-2608

Los Angeles City Clerk
PO Box 53200
Los Angeles, Ca 90052-0200

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**